UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                PLAINTIFF

vs.                                                   CRIMINAL ACTION NO. 3:10-CR-106-CRS

WILLIAM CABBIL, JR.                                           DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on motion of Defendant William Cabbil, Jr. for a modification of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to "extraordinary and compelling reasons." DN 140. On April 14, 2020 Cabbil submitted a request asking Warden Andrews at the Federal Correctional Complex ("FCC") Petersburg, Virginia, to file a motion for compassionate release on his behalf. DN 140-4. Cabbil's request was denied thereafter, presumably in 2020. The denial letter accompanying Cabbil's motion is signed but undated. The letter noted that Cabbil's request was based upon the extraordinary and compelling circumstance of debilitating medical conditions. *Id.* The Warden denied his request because "A complete medical evaluation was completed in March 2020. Although you have chronic medical issues, they are being well managed at this point and are not causing a life-threatening medical problem. You are stable, can perform all Activities of Daily Living (ADL) independently and your medical issues to [sic] not diminish your ability to functional in a correctional setting. You do not meet the criteria for a reduction in sentence based on a debilitating medical condition." *Id.*

Cabbil, through counsel, then filed the instant motion for compassionate release. DN 140. The United States responded and objected to Cabbil's motion on the merits. DN 148. Cabbil did not file a reply. The matter is now ripe for review.

## I. BACKGROUND

In 2010, Cabbil was indicted for possession with intent to distribute heroin and cocaine and being a felon in possession of three firearms. Indictment, DN 1. In September of 2010, the United States filed a notice pursuant to 21 U.S.C. § 851 that Cabbil's prior felony drug convictions would subject him to enhanced penalties upon conviction. Information and Notice, DN 14. In January of 2011, a jury found Cabbil guilty on all three counts. Jury Verdict, DN 22. On April 29, 2011, Cabbil was sentenced to a term of 262 months imprisonment followed by 3 years supervised release. Judgment and Commitment Order, DN 32.

Cabbil was 64 years old at the time of his sentencing. Presentence Report, DN 30. He has a significant drug trafficking history dating back to his first adult trafficking conviction in 1982 when he when he was 34 years old. He had additional trafficking convictions at ages 35, 52, and 57 and committed the present crimes at 63. He had a number of juvenile adjudications as well as adult convictions for forgery and theft. *Id*.

Cabbil indicated that he had a long history of drug abuse issues. He stated that he first used alcohol at the age of 8, marijuana at 12, and cocaine at 14. *Id.* at p. 13. He was held accountable for 62 grams of heroin and 6.5 grams of cocaine with respect to the 2011 trafficking convictions. *Id.* at p. 6, ¶ 14. Cabbil also self-reported to the probation officer that he suffered a heart attack and has Hepatitis C, a cyst on his brain, high blood pressure, high cholesterol,

arthritis, and back pain. *Id.* at p. 13, ¶¶ 55-57 These conditions were listed in the presentence report and were considered by the Court at sentencing. Tr. of Sentencing, DN 52, pp. 13-14.

Cabbil has now served approximately 11 years of his 20-year sentence. He was formerly at FCC Petersburg but is now serving his sentence at the Medical Center for Federal Prisoners ("MCFP") in Springfield, Missouri. His medical records indicate that he was transferred to the medical center in June 2021.

## II. ANALYSIS

### A. Compassionate Release

In evaluating a motion for compassionate release, a district court must engage in a three-step inquiry. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). First, a court "must find that 'extraordinary and compelling reasons warrant such a reduction.'" *Id*. (citing 18 U.S.C. § 3582(c)(1)(A)). Second, a court must "ensure that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id*. Third, a court must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id*.

If a defendant satisfies each of the three requirements, a district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A). Alternatively, if a district court determines that a defendant has failed to satisfy any of the three steps, it need not address the others before denying the motion. *See Elias*, 984 F.3d at 519; *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020).

### 1. Exhaustion of Administrative Remedies

Prior to December 2018, motions for compassionate release could only be made by the Director of the Bureau of Prisons ("BOP"). However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thus, if the BOP does not file for compassionate release, a prisoner must satisfy a mandatory condition to move for such relief on their own behalf. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition").

Here, Cabbil appears to have exhausted his administrative remedies, as he filed the present motion many months after Warden Andrews denied his request for compassionate release. The United States does not contest the documentation provided and concedes that this Court has jurisdiction to hear the matter. We will therefore proceed to consider the motion.

### 2. Extraordinary and Compelling Reasons

18 U.S.C. § 3582(c)(1)(A) permits a district court to reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). But the statute defines the phrase "extraordinary and compelling reasons."

Congress instructed the Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [to] describe what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission released its only policy statement related to compassionate release motions in 2006 and included an application note which provided that "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of subdivision (1)(A)." U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2006). Currently, the Commentary to U.S.S.G. § 1B1.3 describes four circumstances which constitute "extraordinary and compelling reasons" for a sentence reduction:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> (A) Medical Condition of the Defendant.—
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (I) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10

>years or 75 percent of his or her term of imprisonment, whichever is less.
>
>(C) <u>Family Circumstances</u>.
>>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>(D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018).

After Congress passed the First Step Act in December 2018, there was an open question concerning whether § 1B1.13 was applicable to compassionate release motions brought directly by inmates, as the Guidelines suggest that § 1B1.13 only applies to motions brought by the BOP. *See Ruffin,* 978 F.3d at 1006-08. The United States Court of Appeals for the Sixth Circuit resolved the issue in *Jones* by holding that "the passage of the First Step Act render[s] § 1B1.13 inapplicable to cases where an imprisoned person files a motion for compassionate release."[1] *Jones*, 980 F.3d at 1109. As a result of this finding, the Sixth Circuit announced that "district courts have full discretion . . . to determine whether an extraordinary and compelling reason justifies compassionate release." *Id*.

Since *Jones*, the Sixth Circuit has reaffirmed its position that the policy statements in § 1B1.13 do not constrain district courts in considering requests properly filed by defendants for compassionate release under the First Step Act. *See e.g., Elias,* 984 F.3d at 519 ("we hold that §

---

[1] Similarly, the United States Court of Appeals for the Second, Fourth, Seventh, and Tenth Circuit, along with a host of district courts, have concluded that the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants. *See e.g., United States v. Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020); *United States v. Maumau*, 993 F.3d 821, 834-37 (10th Cir. 2021).

1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions"); *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) ("§ 1B1.13 is not an applicable policy statement for defendant-filed motions for compassionate release"). Nonetheless, we note that we may turn to U.S.S.G. § 1B1.13 for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Elias,* 984 F.3d at 519–20 ("in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative").

Having clarified the basic analytical framework necessary for this Court to address claims for relief based upon "extraordinary and compelling reasons," we proceed to the merits of Cabbil's motion.

Cabbil moves the Court for compassionate release "based on the 'extraordinary and compelling reasons' presented by the COVID-19 pandemic and Mr. Cabbil's worsening medical condition." Mo. for CR, DN 140, p. 1. He contends that:

> Mr. Cabbil is a 74 year old man with a past history of hypertension, chronic obstructive pulmonary disease, glaucoma, a history of a prior heart attack and multiple strokes. He also suffers from hepatitis and has been exposed to tuberculosis since being incarcerated.
>
> Mr. Cabbil's severe respiratory disease in particular poses a significant and imminent threat to his health in light of the Covid-19 virus which has ravaged the federal prison system. His chronic airway obstruction - which he has suffered from for many years - has caused him to be prescribed two bronchodilaters, Albuterol and Ipratropium, both of which are moderately helpful to him in expanding the medium and large airways in his lungs. In addition to the inability to properly socially distance within federal prisons, Mr. Cabbil's respiratory problems have been aggravated by the fact that he is not even allowed to open windows or doors in his cell so he can get fresh air due to the Covid lock down

>mandate at his prison. His inability to catch his breath and breathe normally has caused him to suffer wheezing attacks that cannot be cleared by coughing and likely aggravates all of his other conditions which include coronary artery disease.

*Id.* at p. 2.

As of this writing, the Bureau of Prisons reports that MCFP Springfield has no positive cases of COVID-19 among the staff or the inmate population.[2] "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…" *United States v. Elias*, 984 F.3d. 516, 521 (6th Cir. 2021), *citing United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Additionally, Cabbil contends that COVID-19 creates great risks for his safety, yet he contracted COVID-19 in January of 2021 (DN 148-1, p. 362), was apparently asymptomatic and has recovered (*See United States v. Smith*, No. 10-20388, 2021 WL 3077879, *2 (E.D.Mich. July 21, 2021)(discussing development of antibodies in recovered COVID-19 patients and exposure to variant viruses)).

Cabbil was offered but declined the COVID-19 vaccine March 1, 2021 (DN 148-1, p. 404). He did not articulate any reason, much less a compelling one, to justify his decision to decline vaccination. On October 8, 2021, the United States Court of Appeals for the Sixth Circuit stated unequivocally that a defendant who has access to the vaccine and declines it fails to present an "extraordinary and compelling reason" warranting a sentence reduction:

>Lemons's access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are

---

[2] https://www.bop.gov/coronavirus/ (last visited Nov. 8, 2021).

> not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge Easterbrook's assessment that "for people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.*
> 
> …
> 
> [I]f an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling justification. *See Ugbah*, 4 F.4th at 597; *see also Broadfield*, 5 F.4th at 803 ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release.").

*United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). *See also, United States v. Hill*, 2021 WL 1807285 at *2 (N.D.Ohio May 5, 2021)("the court agrees with other courts confronting this issue that a prisoner should not be permitted to qualify for compassionate release by declining to receive a COVID-19 vaccine"). Thus, Cabbil's choice to decline vaccination precludes his present claim.[3]

Cabbil does not contend, nor could he successfully, that his health conditions alone constitute an extraordinary and compelling reason for compassionate release. He suffered from many of these health conditions prior to entering prison 11 years ago. The United States has provided the Court with almost 500 pages of Cabbil's medical records under seal. He has been regularly evaluated and treated for various health conditions while incarcerated. Although he has indicated that his "medical condition" is "worsening," he has suggested only that his "chronic

---

[3] We note from the medical records that Cabbil was offered and declined 9 vaccinations: Influenza (10/13/2020); Pneumococcal conjugate (2/25/2021); Measles/Mumps/Rubella Series (2/25/2021); Influenza (2/25/2021); COVID-19 Moderna (3/1/2021); Hepatitis A Series (4/27/2021); Hepatitis B Series (4/27/2021); Hepatitis A Series (5/4/2021); Hepatitis B Series (5/4/2021). The 6th Circuit has held that a defendant who "failed to utilize the services and tools to assist his health" undermined his claim of extraordinary and compelling reasons for early release, even in light of the COVID-19 pandemic. *United States v. Taylor*, No. 20-4241, 2021 WL 2182320, *2 (6th Cir. May 28, 2021).

airway obstruction," which he admits he has suffered from for many years, "poses a significant an imminent threat to his health in light of the COVID-19 virus…" DN 140, p. 2. Cabbil has now been transferred to a federal medical center for care. A review of his medical records reveals that upon his transfer to the facility his medical chart and labs were reviewed with him in detail, his expressed concerns (dizziness, heart palpitations, urinary frequency) were evaluated and addressed. DN 148-1, pp. 24-47. He was provided a walker to assist with longer distances. He walks shorter distances with a cane. He had numerous diagnostic tests to assess his conditions and medications were adjusted as needed. With regard to his specific concerns over his breathing issues, the most recent note available to the Court, dated July 29, 2021, indicates that he has "no breathing problems currently. He does not have evidence of OSA by sleep oximetry study. In general, feeling better, and adjusting." DN 148-1, p. 1. While this note does not address long-term "chronic airway obstruction" referenced in his motion, it does indicate that in late July 2021, around the date of the filing of his motion, he had no acute respiratory problems requiring more than the regular care he receives for his chronic conditions. It appears that the monitoring and treatment Cabbil is receiving is controlling and stabilizing his condition. While he utilizes a cane or walker for assistance, there is no evidence that he is otherwise significantly physically restricted. Thus, in the absence of the COVID-19 threat he asserts, he has not shown "extraordinary and compelling reasons" for compassionate release.

Additionally, the circumstances of Cabbil's confinement and the law regarding evaluation of claims for compassionate release on grounds related to COVID-19 are continually evolving. 2021 COVID-19-based arguments for compassionate release cannot be premised on 2020 prison conditions. Cabbil himself has not articulated a viable concern about his medical issues due to the COVID-19 pandemic because he presently has no exposure to the virus. Although Cabbil

declined the vaccine, the BOP reports that, to date, 479 staff and 848 inmates have been vaccinated at MCFP Springfield. MCFP Springfield presently houses 954 inmates. https://www.bop.gov/coronavirus (last visited Nov. 8, 2021). The facility has thus taken a significant step, along with other sanitation and exposure protocols, to reduce the potential for spread of the virus should there be any positive cases going forward.

### B. Conclusion

While the coronavirus is far from eradicated, many thousands of inmates have been vaccinated, 245,279 in the federal prison system at last report, and many of the federal institutions have had success in bringing outbreaks of COVID-19 infections under control. *Id.* The dire and dangerous circumstances faced by our most vulnerable populations at the height of the pandemic are, we hope, behind us.

Even so, we cannot know with certainty what COVID-19 and its variants have in store for us. However, the Court must address each inmate's situation individually and in the current context. With respect to Cabbil's present motion for compassionate release, we find that there is no basis for a finding of extraordinary and compelling reasons which would warrant consideration of such relief for this defendant. Thus, his motion fails at the first step in the analysis. The Court will end its analysis here. *See Elias, supra.* at 519)(noting that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others").

For these reasons, the motion of the defendant, William Cabbil, Jr., for compassionate release (DN 140) will be denied by separate order.

November 12, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc:     Counsel of Record