**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

**vs.**                                                    **CRIMINAL ACTION NO. 3:10-CR-106-CRS**

**WILLIAM CABBIL, JR.**                                                  **DEFENDANT**

**MEMORANDUM OPINION**

This matter is before the Court for consideration of the second motion of Defendant William Cabbil, Jr. for a modification of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to "extraordinary and compelling reasons." DN 154. Cabbil is 77 years old and has served approximately 13 years of a 262-month prison sentence. He is presently incarcerated at the Federal Medical Center in Springfield, Missouri.

The United States responded to the motion (DN 159), asserting that Cabbil had failed to exhaust his administrative remedies with respect to his new claim that he was diagnosed with prostate cancer and was not receiving medical care for the condition. Cabbil filed a reply in which he provided documentation to substantiate that he attempted to exhaust his administrative remedies. Additionally, for the first time, he argued that he would not qualify as a career offender today in light of the holding in *United States v. Johnson*, 135 S.Ct. 2551 (2015) and so his sentence should be reduced. DN 162. The Court ordered the United States to file a supplemental brief addressing the exhaustion issue and the merits of Cabbil's claims. DN 164.

The Court further ordered the United States to file Cabbil's medical records under seal for the period December 21, 2021 to the present. *Id.*

The United States filed a supplemental brief addressing Cabbil's motion. DN 168. It also filed the required medical records. DN 170 (sealed). Cabbil also sent a letter to the Court dated May 9, 2023 stating "I fell and broke my hip and femur. I required emergency surgery to replace my hip and placed [sic] a rod in my thigh. I have been moved from my original quarters to 3-2, the highest care level unit here at MCFP Springfield. Clearly, I am deteriorating due to the aging process." DN 165, PageID #1629. Cabbil filed a reply to the United States' supplemental brief in which he takes issue with the United States' analysis of the 18 U.S.C. § 3553(a) factors and again reiterates that he is suffering deteriorating health at the age of 77. DN 173. The issues are now fully briefed and the motion is ripe for review.

## I. BACKGROUND

In 2010, Cabbil was indicted for possession with intent to distribute heroin and cocaine and being a felon in possession of three firearms. Indictment, DN 1. In September of 2010, the United States filed a notice pursuant to 21 U.S.C. § 851 that Cabbil's prior felony drug convictions would subject him to enhanced penalties upon conviction. Information and Notice, DN 14. In January of 2011, a jury found Cabbil guilty on all three counts. Jury Verdict, DN 22. On April 29, 2011, Cabbil was sentenced to a term of 262 months imprisonment followed by 3 years supervised release. Judgment and Commitment Order, DN 32.

Cabbil was 64 years old at the time of his sentencing. Presentence Report, DN 30. He has a significant drug trafficking history dating back to his first adult trafficking conviction in 1982 when he was 34 years old. He had additional trafficking convictions at ages 35, 52, and 57 and

2

committed the most recent crimes at the age of 63. He had a number of juvenile adjudications and additional adult convictions for forgery and theft. *Id*.

Cabbil reported a long history of drug abuse issues. He stated he first used alcohol at the age of 8, marijuana at 12, and cocaine at 14. *Id.* at p. 13. He was held responsible for 62 grams of heroin and 6.5 grams of cocaine in connection with the 2011 trafficking convictions. *Id.* at p. 6, ¶ 14. Cabbil also self-reported to the probation officer that he suffered a heart attack, has Hepatitis C, a cyst on his brain, high blood pressure, high cholesterol, arthritis, and back pain. *Id.* at p. 13, ¶¶ 55-57. These conditions were listed in the presentence report and were considered by the Court at sentencing. Tr. of Sentencing, DN 52, pp. 13-14.

Cabbil has now served approximately 13 years of a 262-month sentence. He was formerly at FCC Petersburg but is now serving his sentence at the Medical Center for Federal Prisoners ("MCFP") in Springfield, Missouri. His medical records indicate that he was transferred to the medical center in June 2021.

Cabbil's previous motion for compassionate release was denied in November of 2021. Cabbil contended at that time that "extraordinary and compelling reasons" existed warranting his release from prison due to a risk of serious illness or death from COVID-19 should he, a man with serious health conditions, contract COVID-19 in prison. For reasons set forth in detail in a Memorandum Opinion entered November 12, 2021 (DN 151), the court denied Cabbil's motion.

In addition to concluding that the combination of Cabbil's health issues and the risk of contracting COVID-19 did not establish an extraordinary and compelling reason, the Court also found that Cabbil could not successfully contend that his health conditions alone constituted an extraordinary and compelling reason for compassionate release. The Court found, in pertinent part:

> Cabbil does not contend, nor could he successfully, that his health conditions alone constitute an extraordinary and compelling reason for compassionate release. He suffered from many of these health conditions prior to entering prison 11 years ago. The United States has provided the Court with almost 500 pages of Cabbil's medical records under seal. He has been regularly evaluated and treated for various health conditions while incarcerated. Although he has indicated that his "medical condition" is "worsening," he has suggested only that his "chronic airway obstruction," which he admits he has suffered from for many years, "poses a significant an imminent threat to his health in light of the COVID-19 virus…" DN 140, p. 2. Cabbil has now been transferred to a federal medical center for care. A review of his medical records reveals that upon his transfer to the facility his medical chart and labs were reviewed with him in detail, his expressed concerns (dizziness, heart palpitations, urinary frequency) were evaluated and addressed. DN 148-1, pp. 24-47. He was provided a walker to assist with longer distances. He walks shorter distances with a cane. He had numerous diagnostic tests to assess his conditions and medications were adjusted as needed. With regard to his specific concerns over his breathing issues, the most recent note available to the Court, dated July 29, 2021, indicates that he has "no breathing problems currently. He does not have evidence of OSA by sleep oximetry study. In general, feeling better, and adjusting." DN 148-1, p. 1. While this note does not address long-term "chronic airway obstruction" referenced in his motion, it does indicate that in late July 2021, around the date of the filing of his motion, he had no acute respiratory problems requiring more than the regular care he receives for his chronic conditions. It appears that the monitoring and treatment Cabbil is receiving is controlling and stabilizing his condition. While he utilizes a cane or walker for assistance, there is no evidence that he is otherwise significantly physically restricted. Thus, in the absence of the COVID-19 threat he asserts, he has not shown "extraordinary and compelling reasons" for compassionate release.

DN 151, pp. 9-10, PageID # 1551-1552.  The Court concluded: "With respect to Cabbil's…motion for compassionate release, we find that there is no basis for a finding of extraordinary and compelling reasons which would warrant consideration of such relief for this defendant. Thus, his motion fails at the first step in the analysis. The Court will end its analysis here. *See [United States v.] Elias,* [984 F.3d 516 (6th Cir. 2021] at 519 (noting that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others")." DN 151, pp. 9-10.

The COVID-19 pandemic is now at an end. Cabbil has again asked the Court to find an extraordinary and compelling reason to grant him compassionate release on the ground of ill health because he was diagnosed in December of 2021 with prostate cancer. DN 154. He contends that this new diagnosis coupled with his other health conditions, including a recent fall requiring surgery, warrant compassionate release. He stated: "Since being told that I have cancer the B.O.P. has not given me any treatment for this life-threatening disease." DN 154, p. 2, PageID #1558. " I am not receiving the proper medical care…" *Id.* at 3, PageID #1559. "I was Diagnosis [sic] with prostate cancer and still I haven't been treated for anything concerning my cancer." *Id*. He also contended that he is "deteriorating due to the aging process," as evidenced by his most recent hip injury. DN 165. He urged that he is remorseful, he has completed over 25 educational programs while in prison and he is not a danger to society. DN 154 at 2, PageID #1558. Initially he did not mention or document that he exhausted his administrative remedies with respect to these new health issues but he did so in his reply brief. DN 162. He provided no documentation or argument concerning exhaustion of any other claims.

The United States has provided updated medical records and responded to the motion. The United States concedes that Cabbil has exhausted his administrative remedies with respect to his cancer diagnosis. See DNs 162; 168.

There is no contention that Cabbil exhausted his administrative remedies with respect to his "broken hip and femur" or his claim that he would not qualify as a career offender in light of *Johnson v. United States.* Therefore the Court would be justified in denying Cabbil's motion with respect to these two asserted bases for compassionate release solely on failure to exhaust grounds. However, we find that the inclusion of these purported bases for compassionate release would not

change the outcome of this motion had administrative remedies been exhausted with respect to them.

## II. ANALYSIS

### A. Compassionate Release

We again set out the groundwork for consideration of a motion for compassionate release.

In evaluating a motion for compassionate release, a district court must engage in a three-step inquiry. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). First, a court "must find that 'extraordinary and compelling reasons warrant such a reduction.'" *Id*. (citing 18 U.S.C. § 3582(c)(1)(A)). Second, a court must "ensure that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id*. Third, a court must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id*.

If a defendant satisfies each of the three requirements, a district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A). Alternatively, if a district court determines that a defendant has failed to satisfy any of the three steps, it need not address the others before denying the motion. *See Elias*, 984 F.3d at 519; *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020).

#### 1. Exhaustion of Administrative Remedies

Prior to December 2018, motions for compassionate release could only be made by the Director of the Bureau of Prisons ("BOP"). However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thus, if the BOP does not file for compassionate release, a prisoner must satisfy a mandatory condition to move for such relief on their own behalf. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition").

Cabbil pursued administrative remedies with respect to his new diagnosis of prostate cancer. The United States does not contest the documentation provided and concedes that this Court has jurisdiction to hear the matter. We will therefore proceed to consider the motion.

### 2. "Extraordinary and Compelling Reasons"

#### (a) Medical Conditions

18 U.S.C. § 3582(c)(1)(A) permits a district court to reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). But the statute defines the phrase "extraordinary and compelling reasons."

Congress instructed the Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [to] describe what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission released its only policy statement related to compassionate

release motions in 2006 and included an application note which provided that "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of subdivision (1)(A)." U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2006). Currently, the Commentary to U.S.S.G. § 1B1.3 describes four circumstances which constitute "extraordinary and compelling reasons" for a sentence reduction:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> (A) Medical Condition of the Defendant.—
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>> (ii) The defendant is—
>> (I) suffering from a serious physical or medical condition,
>> (I) suffering from a serious functional or cognitive impairment, or
>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018).

After Congress passed the First Step Act in December 2018, there was an open question concerning whether § 1B1.13 was applicable to compassionate release motions brought directly by inmates, as the Guidelines suggest that § 1B1.13 only applies to motions brought by the BOP. *See Ruffin,* 978 F.3d at 1006-08. The United States Court of Appeals for the Sixth Circuit resolved the issue in *Jones* by holding that "the passage of the First Step Act render[s] § 1B1.13 inapplicable to cases where an imprisoned person files a motion for compassionate release."[1] *Jones*, 980 F.3d at 1109. As a result of this finding, the Sixth Circuit announced that "district courts have full discretion . . . to determine whether an extraordinary and compelling reason justifies compassionate release." *Id*.

Since *Jones*, the Sixth Circuit has reaffirmed its position that the policy statements in § 1B1.13 do not constrain district courts in considering requests properly filed by defendants for compassionate release under the First Step Act. *See e.g., Elias,* 984 F.3d at 519 ("we hold that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions"); *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) ("§ 1B1.13 is not an applicable policy statement for defendant-filed motions for compassionate release"). Nonetheless, we note that we may turn to U.S.S.G. § 1B1.13 for "helpful guidance" in ascertaining whether extraordinary and

---

[1] Similarly, the United States Court of Appeals for the Second, Fourth, Seventh, and Tenth Circuit, along with a host of district courts, have concluded that the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants. *See e.g., United States v. Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020); *United States v. Maumau*, 993 F.3d 821, 834-37 (10th Cir. 2021).

compelling reasons exist that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Elias,* 984 F.3d at 519–20 ("in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative").

We will address the claims for relief under this basic analytical framework.

Cabbil has moved the Court for compassionate release stating repeatedly that he is physically deteriorating due to age. He stated in his motion: "Since being told that I have cancer the B.O.P. has not given me any treatment for this life-threatening disease." DN 154, p. 2, PageID #1558. He stated that he is "not receiving the proper medical care" as "I was Diagnosis [sic] with prostate cancer and still I haven't been treated for anything concerning my cancer." *Id*. at 3, PageID #1559. Cabbil filed his motion for compassionate release in November 2022 concerning his December 2021 cancer diagnosis claiming that he had not been given any treatment and was not receiving proper medical care.

The medical records establish that the assertion that he was not receiving care and treatment for prostate cancer was simply untrue. Cabbil underwent biopsy and was diagnosed with a "Gleason 6 slow growing Prostate Cancer, Stage 1" in December 2021. His pre-treatment prostate-specific antigen ("PSA") was 4.8. He received a PET scan in January 2022 and a CT scan in March 2022, ruling out the presence of metastatic cancer. A urologist had explained the robotic prostatectomy procedure to him, an option he rejected by May of 2022. In June, 2022 a radiation oncologist discussed Stereotactic Body Radiation Therapy ("SBRT") with Cabbil. Because he is a black male and thus possibly at risk for a more aggressive disease, the oncologist ordered a decipher genomic test to evaluate the tumor, despite the fact that Cabbil's PSA and

10

Gleason scores placed him in a low risk category for aggressive disease. The test was done to provide additional information to assist Cabbil in making a decision concerning treatment options. In September 2022 Cabbil's PSA had dropped to 1.9. In November 2022 the genomic test results came back confirming Cabbil was at low risk for aggressive disease. In light of the low PSA, Gleason score and low-risk finding from the decipher genomic test, active surveillance was recommended as the best option with PSA monitoring every six months. Cabbil had a follow-up visit with the urologist in May 2023 and was recommended to continue with active surveillance every six months.

Thus, contrary to Cabbil's assertions, his prostate cancer was very promptly and intensively investigated and evaluated. He was found to be at low risk for aggressive growth of the cancer, he declined prostatectomy, and when his PSA dropped significantly to 1.9, active surveillance was recommended and has continued. His prognosis and the recommended course of treatment were explained to him and to his fiancé. The medical records do not evidence any complaints in this regard.

Cabbil suffered from many of his other health conditions prior to entering prison 13 years ago. To date the United States has provided the Court with almost 2,000 pages of Cabbil's medical records under seal. Cabbil has been regularly evaluated and treated for various health conditions while incarcerated. He indicates that he has "been debilitated by a host of serious, life-threatening ailments" that he again recounts, most of which he suffered from at the time he entered prison and all of which are adequately managed with monitoring and, where needed, medication at FMC Springfield. As we noted in our prior opinion, a review of the medical records reveals that upon his transfer to FMC Springfield his medical chart and labs were reviewed with him in detail, his expressed concerns (dizziness, heart palpitations, urinary frequency) were

11

evaluated and addressed. DN 148-1, pp. 24-47. He was provided a walker to assist with longer distances. He also employed a cane to walk shorter distances. He now indicates that he relies on his walker exclusively. He has had numerous diagnostic tests to assess his conditions including the above-described tests for prostate cancer and medications were adjusted as needed. We again reiterate that the monitoring and treatment Cabbil is receiving appears to be controlling and stabilizing his medical conditions.

Although he utilizes a walker for assistance, there is no evidence that he is otherwise significantly physically restricted. Cabbil fell and suffered an intertrochanteric hip fracture which was surgically repaired on April 25, 2023. By May 15, 2023, the date of the last medical record provided to the Court, Cabbil was recovering well from the surgery. He received physical therapy during his recovery and was moved temporarily to a unit one floor directly above physical therapy so "he [could] travel to PT in WC with assist." This medical note was made on May 2, 2023, seven days after his surgery. The note further states that "[e]ventually he will return to 1-3, but elevators are broken…" Thus Cabbil's statement that he has been "moved from [his] original quarters to 3-2, the highest care level unit here at MCFP Springfield" fails to include the reason for the move as stated in the medical note. Cabbil does not acknowledge that he was expected to return to his former quarters. While the medical notes indicate some difficulties with pain and nausea for some period of time immediately after the surgery, these issues apparently resolved by mid-May.

While a man of 77 will no doubt face health challenges, the additional ailments now described by Cabbil as evidencing further decline in his health do not alter our earlier conclusion that Cabbil has failed to establish an extraordinary and compelling reason for compassionate release. In his attempt to articulate a reason, Cabbil repeats his assertion that he is "deteriorating

due to the aging process" and has misrepresented both the nature and extent of his conditions and treatment.

Cabbil has repeated the language found in the Commentary to U.S.S.G. § 1B1.13 which provides examples of extraordinary and compelling reasons for compassionate release. The "Age of the Defendant" is defined as an individual who "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.". As already noted, the Commentary is not binding on the Court but may be considered for guidance in evaluating claims for compassionate release. Cabbil is 77 years old and has served 13 years of an almost 22-year sentence, so he meets two of the three criteria under the "Age of the Defendant" category.

The Commentary provides no guidance concerning what constitutes "serious deterioration in physical or mental health because of the aging process." We note, however, that this subsection is clearly of a piece with the other subsections identifying circumstances such as terminal illness and the permanent inability to provide self-care in the prison environment. We thus conclude that "serious deterioration in physical or mental health" requires more than chronic ailments and transitory or stable, non-terminal conditions. In this Court's view, the existence of well-controlled, treated, and monitored conditions in a 77-year-old individual does not establish "serious deterioration" for purposes of the example in the Commentary.

> The statute sets a legal standard: It requires "extraordinary *and* compelling reasons" to modify a prisoner's already-final sentence. § 3582(c)(1)(A)(i) (emphasis added). So it is not as if Congress left sentence modifications entirely to the district courts' "discretion." Although the statute does not define "extraordinary and compelling," those words still have their "ordinary meaning at the time Congress enacted the statute." *See New Prime Inc. v. Oliveira*, ⎯⎯ U.S. ⎯⎯⎯, 139 S. Ct. 532, 539, 202 L.Ed.2d 536 (2019) (alterations omitted) (quoting *Wisconsin Central Ltd. v. United States*, ⎯⎯ U.S. ⎯⎯, 138 S. Ct. 2067, 2074,

13

> 201 L.Ed.2d 490 (2018)); *see also Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012). And when Congress enacted the statute in 1984, "extraordinary" was understood to mean "most unusual," "far from common," and "having little or no precedent." Webster's Third New International Dictionary: Unabridged 807 (1971). "Compelling" meant "forcing, impelling, driving." *Id.* at 463.

*United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021), *cert. denied,* 142 S. Ct. 2771, 213 L. Ed. 2d 1008 (2022). The Sixth Circuit further noted that "facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *Id.* at 563. We do not find evidence of "serious physical or mental deterioration because of the aging process" that is far from common and compels us to grant Cabbil compassionate release.

Even so, were we to determine that Cabbil's medical issues placed him within the "Age of the Defendant" category, a finding physical or mental deterioration "extraordinary and compelling" does not automatically entitled Cabbil to compassionate release. An "Age of the Defendant" finding is only the first step in the analysis.

### (b) 18 U.S.C. § 3553(a) Factors

In addition to demonstrating that extraordinary and compelling reasons exist for compassionate release, Cabbil must demonstrate that he is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g), and that the factors set forth in 18 U.S.C. §3553(a) support a reduction. *See Jones*, 980 F.3d at 1108 (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)) ("step three, . . . 'instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case'"). To

determine whether the factors weigh in favor of a reduction, the Court has reviewed the nature and circumstances of Cabbil's offense, along with history and characteristics identified in the Presentence Report ("PSR," DN 30). In addition, we have considered Cabbil's conduct while in prison. 18 U.S.C. § 3553(a). The Court assessed the need for the sentence imposed to

> (1) reflect the seriousness of Cabbil's offense,
> (2) promote respect for the law,
> (3) provide a just punishment for his offense,
> (4) afford adequate deterrence, and
> (5) provide him with needed education and training, medical care, or other correctional treatment.

*Id*.

Further, the Court considered

> (1) the danger to the public as the result of any reduction in Cabbil's sentence,
> (2) the seriousness of his offenses, and
> (3) the need to protect the public.

*Id*.

The Court reviewed

> (1) the kinds of sentences available,
> (2) the sentencing range, the need to avoid unwarranted disparities, and
> (3) the need to provide restitution to any victims.

*Id*.

After consideration of the record as a whole, the Court finds that had an "extraordinary and compelling" reason had been shown on this motion, the Court would be hard pressed to conclude that Cabbil should be afforded compassionate release. We have reviewed the original sentencing proceedings and considered the arguments of the parties. The § 3553(a) factors weigh decidedly against a grant of compassionate release. The Court is not required to specifically articulate each § 3553(a) factor in rendering a decision on a compassionate release motion. *Jones*, 980 F.3d 1098. Instead, we comment on only the most pertinent considerations.

We find that the nature of the offenses of conviction and Cabbil's history and characteristics which informed the Court at sentencing establish that the 262-month sentence properly reflected the seriousness of the offenses and provided just punishment. On review, the Court finds no reason to find the sentence unjust for this defendant who has an almost thirty-year history of criminal activity  Particularly with respect to drug trafficking, Cabbil was convicted in 1982 in Jefferson Circuit Court for trafficking Diazepam. A number of months later he was convicted for trafficking Pentazocine. He was convicted in 1999 for trafficking in cocaine and in 2004 he was convicted for trafficking in heroin and hydrocodone. In this case, Cabbil was held responsible for 62.068 grams of heroin, 6.556 grams of cocaine and three firearms. (DN 30, p. 6, ¶14). Cabbil qualified as a Career Offender and an Armed Career Criminal when sentenced by this Court. His offenses are serious, this most recent conviction involving three firearms in addition to a quantity of drugs. Cabbil was repeatedly sentenced to terms of imprisonment which apparently made no impact on him. He continued to commit crimes while on probation. Cabbil was 64 years old at the time of sentencing and obviously undeterred by any of the prior punishment he received.

Cabbil has served 13 years, approximately sixty percent of his sentence. Thirteen years exceeds the 10-year benchmark found in the "Age of the Defendant" category, but that benchmark is not addressed to the sufficiency of the particular sentence imposed. As Cabbil qualified as a Career Offender and Armed Career Criminal, this Court found 262 months sufficient but not a greater punishment than necessary to meet the objectives of sentencing for this defendant. Cabbil's suggestion that he has served sufficient time simply because the sentence is over twice as long as sentences he received in the past and he is 77 years old is an untenable argument as it fails to account for the specific reasons the Court articulated for imposing a lengthy sentence in this case.

A reduction of the sentence would fail to account for the seriousness of the offenses and would not provide adequate deterrence, taking into account the characteristics of Cabbil and his history.

The punishment he received is no greater than necessary to accomplish the goals of respect for the law, just punishment, deterrence, and the protection of the public. Cabbil argued that his criminal lifestyle was prompted by drug addiction. He stated he is no longer an addict, having completed drug treatment while in prison. We note that he did complete 78 hours of drug addiction education (NRDAP) in 2014. Cabbil also argued that the Court should find he is no longer a danger to society due to his age. Statistically, Cabbil's age favors a finding that he would not pose a significant risk to the public if he were released at this time. However, the fact that he was 63 at the time he committed the crimes for which he is serving his current sentence renders the Court less confident that age is an impediment to the commission of crimes by this defendant. Additionally, the number of drug trafficking offenses and their frequency reflects a complete disregard for the law. It is all the more disturbing that Cabbil also possessed three firearm despite being a convicted felon. Cabbil's inability to conform his conduct to the law, or his choice not to do so, over a thirty-year period factors against the defendant when considering whether he poses a danger to the public. These factors reinforce the Court's determination that Cabbil's sentence is no greater than necessary to meet the goals of respect for the law, just punishment, deterrence and protection of the public.

Additionally, Cabbil's efforts at rehabilitation do not, in this Court's view, offset his criminal history to any degree. Cabbil contends that he has completed "hundreds of hours" and "dozens of courses" in prison and "has done everything possible to prepare for a crime-free life by his prison studies, rehabilitation training and leadership." DN 173, p. 1; DN 154, p. 3-4. He overstates the case, however, when the record is reviewed. Cabbil has completed 168 total hours

during thirteen years in prison. He completed 78 of those hours in drug abuse education in 2014. A review of his record evidences that he has not completed even one dozen courses during his incarceration. While he has taken a number of courses, his performance falls far short of significant rehabilitative, educational, or leadership development. His 2014 drug course aside, the educational opportunities of which he has thus far availed himself amount to no more than an hour per month on average. The last educational credit was for 4 hours in 2021. Before that, the last entry was for a class in 2017.

The most difficult issue for the Court is Cabbil's lack of candor with the Court with respect to his medical care, the nature and extent of his health conditions, and his educational and rehabilitative efforts in prison. These exaggerations unfortunately leave the Court unable to confidently accept at face value Cabbil's assertions that he has experienced a "paradigm shift," that he has "taken a path dedicated toward self-improvement," and that he has "done nothing but displayed character of repentance and obedience." DN s 154, 173. While we have considered his statements in conjunction with all of the other factors, we do not find them persuasive.

Accordingly, the Court finds that the § 3553(a) factors and § 4142(g) support a reduction in Cabbil's sentence.

### (c) Application of *United States v. Johnson*

Finally, Cabbil adds the additional argument for a reduction in his sentence on the ground that he would not qualify as a career offender today in light of *United States v. Johnson*, 135 S.Ct. 2551 (2015), a case in which the Supreme Court found the "residual clause" of the Armed Career Criminal Act ("ACCA") unconstitutionally vague.

The ACCA provides for enhancement of sentence when a person convicted of being a felon in possession of a firearm has previously been convicted of a violent felony or a serious drug offense. The "residual clause" with which the *Johnson* case was concerned relates to the definition of "violent felony" under the Act.

Cabbil was sentenced as an armed career criminal under the ACCA but his prior convictions were for serious drug offenses, not violent felonies. Therefore, the *Johnson* decision has no impact on his sentence. Cabbil's assertion that his sentence should be reduced in light of the *Johnson* decision is without merit.

### B. Conclusion

We quote the United States Court of Appeals for the Sixth Circuit in the recent decision of *United States v. McKinnie*, 24 F.4th 583, 587-88 (6th Cir. 2022) commenting on the importance of finality in criminal cases:

> [F]inality is "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). As Justice Harlan observed a half century ago, "[n]o one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved." *Mackey v. United States*, 401 U.S. 667, 691, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring). Among other grounds supporting the need for finality are the "significant ... resources" dedicated to prosecuting crimes, as well as the weighty interests that crime victims, the government, and the public share in a defendant serving the full term of his lawfully imposed sentence. *Cf. Edwards v. Vannoy*, —— U.S. ——, 141 S. Ct. 1547, 1554–55, 209 L.Ed.2d 651 (2021) (emphasizing that the finality of criminal convictions has paramount importance).

We make this point to emphasize that, "[b]y statute, a federal court 'may not modify a term of imprisonment once it has been imposed.' 18 U.S.C. § 3582(c). But that rule comes with a few

exceptions, one of which permits compassionate release." *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Compassionate release is the exception rather than the rule, and the grant of compassionate release is left to the sound discretion of the Court. In this instance, for all of the reasons stated herein, we find that Defendant William Cabbil, Jr. is not an appropriate candidate for compassionate release nor has he shown any other basis for a reduction in his sentence.

Cabbil has not shown "extraordinary and compelling reasons" warranting consideration of compassionate relief. Thus, his motion fails at the first step in the analysis. Further, were "extraordinary and compelling reasons shown, consideration of the § 3553(a) factors counsel against granting such relief to Cabbil. The Court will deny his motion for compassionate relief by separate order.

August 31, 2023

Charles R. Simpson III, Senior Judge
United States District Court

cc: Counsel of Record
William Cabbil Jr., *pro se*